UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CT-03002-BO

**William Michael Huggins**,

        Plaintiff,

v.

**Officer Roach, et al.**,

        Defendants.

**Memorandum & Recommendation**

This matter is before the court on plaintiff William Michael Huggins's Motion for Preliminary Injunction (D.E. 18), Motion for Temporary Restraining Order (D.E. 18-1), and Motion for Order to Show Cause (D.E. 18-3) filed July 29, 2015. Huggins claims that the defendants have been deliberately indifferent to his medical needs and requests the court to enter its order requiring surgery to be performed on his shoulder. After reviewing the pleadings, the court determines that Huggins failed to make the "clear showing" that he is entitled to relief which is required for issuance of a preliminary injunction. Therefore, the undersigned recommends[1] that the district court deny Huggins's Motion for Preliminary Injunction.

**I.     Background**

On January 5, 2015, Huggins, a state inmate confined at Nash Correctional Institution, filed a complaint pursuant to 42 U.S.C. § 1983. He alleges that prison staff were deliberately indifferent to his need for medical care after Defendant Roach, a Nash Correctional Officer, closed a high pressured door on him, severely injuring his right shoulder. Compl. 3–5. Huggins

---

[1] The district court referred this matter to the undersigned United States Magistrate Judge for the entry of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1).

also seeks an injunction from the court requiring prison staff to provide him with shoulder surgery.

In response to Huggins's complaints of pain, x-rays were taken of his shoulder on October 14, 2013, and November 18, 2013, and an M.R.I. of his shoulder was performed on January 17, 2014. *See* Mot. Prelim. Inj. at 2. Huggins states that the x-rays and M.R.I. revealed injury to the rotator cuff, joint separation, and torn ligaments in his right shoulder. In February 2014, Dr. Umishi prescribed pills for pain. *Id.*

Huggins continued to complain of pain, and on June 6, 2014, Huggins was sent to Central Prison Hospital where he underwent arthroscopic surgery. However, Huggins states that the surgery did not relieve his pain. *Id.* He subsequently "expressed the need for proper medical surgery" to Dr. Umishi, who instead gave Huggins a shot of Predisone and prescribed pain pills. *Id.* at 3.

Dissatisfied with Dr. Umishi's treatment of his injury, Huggins sought assistance from defendant Drew Stanley, Facility Superintendent, who did not help him, but rather "falsely informed the Grievance Board Commit[ee] that [Huggins's] severe injuries had been taken care of…." *Id.*

Huggins next sought assistance from defendant Dennis Rowland, Assistant Superintendent of Programs, who, Huggins alleges, "neglected to compel[] Nash medical facility to provide proper medical assistance" to him, and similarly "falsely informed [the] Grievance Board Commit[tee] that [his] severe injuries had been taken care of…." *Id.*

On December 22, 2014, after more complaints of pain and his right shoulder locking while in motion, prison staff took Huggins to Nash Orthopedic Center in Rocky Mount where Dr. Nelson took x-rays. Dr. Nelson informed Huggins and the correctional officers that

2

Huggins's injuries "were so severe that, [Dr. Nelson] … was not qualified to perform the surgery [that was] needed." *Id.* at 4. Dr. Nelson gave Huggins a shot of Prednisone in his right shoulder for pain. *Id.*

Huggins alleges that during subsequent sick call visits to Dr. Umishi, Dr. Umishi told Huggins that he would "get back with [Huggins] soon" but did not do so. *Id.* Huggins alleges that on June 25, 2015, he saw Dr. Umishi for shoulder pain and hoped that Dr. Umishi would recommend surgery. However, Dr. Umishi told Huggins he would "get back with him after he reviewed Dr. Nelson's x-rays that were taken on December 22, 2014," but never called Huggins back. *Id.*

## II. Standard of Review

The substantive standard for granting either a temporary restraining order or a preliminary injunction is the same. *See, e.g., U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n.1 (4th Cir. 2006). A court may grant a temporary restraining order or a preliminary injunction if the moving party demonstrates the following: (1) "that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm.*, 575 F.3d 342, 345 (4th Cir. 2009), *vacated on other grounds*, 559 U.S 1089 (2010), *reissued in relevant part*, 607 F.3d 355 (4th Cir. 2010) (per curiam).

Injunctive relief, such as the issuance of a preliminary injunction, is an extraordinary remedy that may be awarded only upon a clear showing that the plaintiff is entitled to such relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see also MicroStrategy Inc. v. Motorola, Inc.*,

245 F.3d 335, 339 (4th Cir. 2001) (a preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances."). This is particularly true in a case such as this where the plaintiff seeks a preliminary injunction that is mandatory in nature instead of prohibitatory. In such a circumstance, "a mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind." *Sun Microsystems, Inc. v. Microsoft Corp. (In re Microsoft Corp. Antitrust Litig.)*, 333 F.3d 517, 525 (4th Cir. 2003), *abrogated on other grounds by eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).

## III. Discussion

It is clear from Huggins's pleadings that he seeks surgery for his shoulder injuries. *See, e.g.*, Decl. Supp. Mot. Prelim. Inj. at 2, ¶ 4, D.E. 18-2; Proposed Order at 1, D.E. 18-3. The issue here is whether Huggins has met the standard for issuance of a preliminary injunction ordering the surgery he seeks. The Eighth Amendment to the Constitution "imposes duties on [prison] officials, who must … ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). Emphasizing that "[p]rison conditions may be restrictive and even harsh," *id.* at 833 (internal quotations omitted), the Supreme Court has held that to sustain an Eighth Amendment claim, a prisoner must show (1) that the deprivation was objectively sufficiently serious—that is, the deprivation must be a "denial of the minimal civilized measure of life's necessities" and (2) that the defendant was deliberately indifferent to the prisoner's health or safety. *Id.* at 834 (internal quotations omitted). Thus, deliberate indifference requires a showing that the defendants

4

actually knew of and disregarded a substantial risk of serious injury to the prisoner or that they actually knew of and ignored a prisoner's serious need for medical care. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 575–76 (4th Cir. 2001). An inmate is not entitled to choose his course of treatment, *see Russell v. Sheffer*, 528 F.2d 318, 318–19 (4th Cir. 1975) (per curiam), and mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. *Estelle v. Gamble,* 429 U.S. 97, 105–06 (1976); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). In the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment. *See Goodman v. Johnson*, 524 F. App'x 887, 889 (4th Cir. 2013).

There is no indication in the record that defendants have been deliberately indifferent to Huggins's medical needs. Rather, Huggins has been provided medical treatment for his shoulder injury on numerous occasions in response to his complaints of pain. Huggins was initially treated by the prison physician who performed an M.R.I. of Huggins's shoulder, took x-rays showing the injuries, and prescribed pain medication. However, Huggins continued to complain of pain and was transported to Central Prison Hospital where arthroscopic surgery was performed. After the surgery, Huggins continued to complain of pain and the prison physician administered a shot of Prednisone and prescribed more pain medication. When Huggins continued to complain of pain, prison staff transported him to Nash Orthopedic Center in Rocky Mount where medical providers took x-rays and administered another shot of Prednisone to his shoulder. Although Huggins clearly disagrees with the treatment he has received, the mere disagreement with the course of medical treatment will not support an Eighth Amendment claim for deliberate indifference to serious medical needs. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). The facts alleged by Huggins do not establish a "clear showing" that Huggins will

5

prevail in his § 1983 action. Therefore, the preliminary injunction and temporary restraining order sought by Huggins is not warranted.

## IV. Conclusion

Because Huggins has failed to clearly show that he is entitled to the relief requested, the undersigned recommends that the district court deny Huggins's Motion for Preliminary Injunction (D.E. 18) and his Motion for a Temporary Restraining Order (D.E. 18-1). The undersigned also recommends that the district court deny Huggins's Motion for Order to Show Cause (D.E. 18-3) as moot because it asks the court for a Show Cause hearing on the motion for a preliminary injunction and the motion for a temporary restraining order.

The court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on plaintiff. Plaintiff shall have until 14 days after service of the Memorandum and Recommendation on plainitff to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If plaintiff does not file written objections to the Memorandum and Recommendation by the foregoing deadline, plaintiff will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the**

**Memorandum and Recommendation without such review. In addition, plaintiff's failure to file written objections by the foregoing deadline will bar plaintiff from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846–47 (4th Cir. 1984).**

Dated: January 12, 2016

*Robert T. Numbers II*

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE