UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CT-03002

| | |
|---|---|
| **William Michael Huggins**, <br><br> Plaintiff, <br><br> v. <br><br> **Officer Roach,** et al., <br><br> Defendants. | **Order &** <br> **Memorandum & Recommendation** |

## I.      Procedural Background

On January 5, 2015, Plaintiff William Michael Huggins, proceeding *pro se*, filed suit against Nash Correctional Institution ("Nash CI") Officers Roach, Stanley, and Rowland.  D.E. 1.  The district court conducted a frivolity review pursuant to 28 U.S.C. § 1915, identified the sole issue in the case as "deliberate indifference to a serious medical condition in violation of the Eighth Amendment[,]"  and allowed Huggins to "proceed with his claim of deliberate indifference against the defendants." D.E. 7 at 2, 5. However, at summary judgment, both parties briefed whether Roach violated Huggins's Eighth Amendment rights by intentionally closing a cell block door on him. The court will address this additional issue as well.

The court's scheduling order required the parties to file all motions (except those relating to admissibility at trial) by December 8, 2015.  D.E. 25.  On November 16, 2015, Huggins filed his first Request for Production of Documents, seeking both written records of the incident giving rise to this suit and a transcript of any legal proceedings related to this case at which he was not present.  D.E. 27 at 1.  Defendants sought and received an extension of the dispositive motion deadline until January 22, 2016, to respond to this discovery. D.E. 28, 31.

1

On January 22, 2016, Defendants moved for summary judgment. D.E. 33. Huggins responded by requesting, pursuant to Rule 56(d), that the court delay ruling on the motion for summary judgment until he conducted additional discovery D.E. 40. He also requested that, pursuant to Rule 34, Defendants produce, among other things, video footage of the incident, his medical records, and his prison records. D.E. 42. Defendants opposed the Rule 56(d) motion and contended that additional discovery should not be allowed because the discovery period closed long ago. Additionally, Defendants represent that the video Huggins seeks does not exist and that relevant medical records were provided with the documents submitted in support of their summary judgment motion. Thereafter, Huggins filed an affidavit in opposition to the Defendants' summary judgment motion.

After considering the parties' arguments and the relevant law, Huggins has not demonstrated that he is entitled to the relief he seeks and his motions will be denied. Additionally, the Defendants have shown that they are entitled to summary judgment on Huggins's claims against them and the undersigned will recommend that the district court enter a judgment in their favor.

## II.    Factual Background

### A.    Huggins is Struck by a Cell Block Door

The parties agree on this much: on September 6, 2012, a cell block door struck Huggins, an inmate at Nash Correctional Institution, in his right shoulder while it was closing. *Id*. The circumstances leading up to this incident, however, are in dispute.

#### 1.    Defendant's Contentions

According to the Defendants, ensuring that cell-block doors are kept closed except when authorized individuals are passing through is an important part of maintaining the security and

2

orderly operation of the prison. Roach Aff. ¶ 7, D.E. 36-1. Correctional officers control the door

from inside a glass-encased booth using a push-button system. *Id*. ¶ 7. When a corrections

officer wanted to close a door to a housing unit, he would push a series of buttons, which would

cause the door to close in 30 seconds or less. *Id*. ¶ 7–8. Once the process of closing the door

was initiated, there is no way to stop it. *Id*. ¶ 8.

On the day in question, Roach was stationed in the control booth and able to view the

various doors she was charged with overseeing. *Id*. ¶ 9. Huggins was among a group of inmates

waiting to enter a cell block. *Id*. When the door opened, all of the inmates except for Huggins

entered the cell block. *Id.* Huggins remained outside the cell block and, after a few moments,

Roach pressed the necessary buttons to close the door because she believed that he did not want

to enter the cell block. *Id.* Roach denies intentionally closing the door on Huggins. *Id. ¶* 10.

After Huggins reported an injury, Bryon Harris, a Correctional Assistant Unit Manager at

Nash CI, investigated Huggins's claim that Roach intentionally shut the door on him. Harris Aff.

¶¶ 2, 4, D.E. 36-4. As part of his investigation, Harris reviewed video footage of the incident.

*Id*. ¶ 8. According to Harris, the video showed Huggins standing in front of an open doorway

reading a document. *Id*. The video also apparently showed that when Huggins did not proceed

through the doorway, Roach pressed the button to close the door. *Id*. The video also showed

that Huggins began to walk through the door while it was closing and it struck him on the

shoulder. *Id*. However, the video was not preserved and, pursuant to the standard practice, was

overwritten 30 days after it was recorded. *Id*.

In the summer of 2015, Huggins spoke with Gary Stokley, an Assistant Unit Manager at

Nash CI. Stokely Aff. ¶¶ 2, 11, D.E. 36-5. During their conversation, Stokley asked Huggins

why he did not see the door. *Id.* Huggins responded that he did not see the door because he was

3

reading while he was walking through the door. *Id.* Huggins also told Stokley that he had previously injured his shoulder during weight lifting. *Id.*

### 2. Huggins's Contention

Huggins presents a different version of events. He claims that he was summoned to Harris's office along with two other inmates over the facility's public address system. Huggins Aff. ¶ 7, D.E. 44. Huggins and his fellow inmates gathered outside of the cell block door and waited for the door to open. *Id.* ¶ 8. Contrary to Harris's statement, Huggins claims that he was not standing in front of an open door reading a document. *Id.* ¶ 9. Instead, he claims he assumed he would be able to walk through the doorway in the same manner as the other two inmates. *Id.* However, before he got through the doorway, he was struck by the closing door. *Id.* Huggins also claims that Roach had the ability to stop the door from closing on him. *Id.* ¶ 11. Huggins claims that as a result of the door striking him, he suffered torn ligaments and a bone joint separation. Compl. at 5, D.E. 1.

### B. Medical Care

In the immediate aftermath of the incident, a sergeant asked Huggins if he needed medical treatment. Huggins responded that although he was in pain, he did not have the funds to pay for medical care. D.E. 44-1 at 9. He added that he only wanted to receive medical care if the pain worsened. *Id.* It was not until three weeks later that Huggins saw a medical provider regarding his shoulder. Umesi Aff. ¶ 6, D.E. 36-6.

However, the incident involving the cell block door was not the first time Huggins sought medical care related to his shoulder. Medical records reflect that Huggins previously complained of a right shoulder injury in 2010 that was related to weight lifting. *Id.* ¶ 7. An x-ray taken at that time showed an AC joint separation and his doctor recommended physical therapy. *Id.* The

4

doctor also noted that even surgical ligament repair would not restore normal joint movement to the right shoulder. *Id.*

On November 6, 2012, Huggins saw Dr. Umesi, a physician at Nash CI, where he complained about "constantly hearing his bones rubbing against each other and popping sounds from his joints." *Id.* Dr. Umesi noted the complaint as a sign of arthritis, and in his physical exam he noted a crepitus in Huggins's right shoulder joint, which is a clinical indication of arthritis. *Id.* Dr. Umesi provided Huggins with a pain reliever, recommended physical therapy, and scheduled a six-month follow-up appointment with him. *Id.*

On February 8, 2013, Huggins had the follow-up appointment with Dr. Umesi. *Id.* He noted that Huggins's exam was consistent with arthritis and degenerative joint disease. *Id.* He increased Huggins's pain medication and recommended more physical therapy. *Id.*

On April 6, 2014, Huggins met with Dr. Umesi again and complained of shoulder pain, but in a different part of his shoulder. *Id.* Dr. Umesi administered a therapeutic joint injection and discontinued the pain medication due to side effects. *Id.*

There were two more follow-up appointments on May 10, 2013, and July 19, 2013. *Id.* Both times Dr. Umesi treated Huggins's shoulder with the joint injections and provided him with a new pain medication. *Id.*

On August 30, 2013, Dr. Umesi performed another physical exam and noted that Huggins had free range of motion in his extremities. *Id.* Huggins saw a different physician, Dr. DeVaul, on October 8 and 16, 2013, and he recommended Huggins continue withconservative treatment on his shoulder. *Id.*

On June 6, 2014, after an MRI and x-ray, Huggins underwent arthroscopic surgery on his shoulder. *Id.* He met with Dr. Umesi on June 12, 2014, for a post-surgery appointment and was

5

prescribed antibiotics to prevent a potential infection at the surgical site. *Id*. Additionally, Huggins received post-surgery physical therapy. D.E. 36-3 at 7. On December 22, 2014, Huggins had another round of x-rays on his right shoulder (D.E. 44), and on January 8, 2015, Dr. Umesi noted that Huggins's shoulder complaints were resolved. D.E. 36-6.

Dr. Umesi opined that based upon his review of Huggins's medical records and course of the treatment indicated, Huggins's shoulder problems were the result of a chronic degenerative disease that is not atypical in individuals who practice heavy weight lifting, and not the incident involving the cell block door in 2012. *Id*.

## III.    Motion to Reopen Discovery Period Discovery

Although the dispositive motion deadline passed on January 22, 2016, Huggins now requests the production of additional documents from Defendants.  The court construes this request as a motion to amend the scheduling order to allow additional time for discovery pursuant to Rule 16(b) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 16(b).  As Huggins has not made the necessary showing to reopen the discovery period, his motion is denied.

Rule 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause and with the judge's consent."  The Fourth Circuit explained that "after the deadlines provided by a scheduling order have passed, the good cause standard *must be satisfied* to justify leave to amend the pleadings."  *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (emphasis added).

"The touchstone of 'good cause' under Federal Rule of Civil Procedure 16(b) is *diligence*." *Blackwell v. City of Concord*, No. 1:11-cv-328, 2013 WL 395107, at *3 (M.D.N.C. Jan. 31, 2013) (quoting *Marcum v. Zimmer*, 163 F.R.D. 250, 255 (S.D.W. Va. 1995)) (internal

brackets omitted).  In the case of a late discovery request, the "movant must demonstrate that the reasons for the tardiness of his motion justify a departure from the rules set by the court in its scheduling order."  *Taylor v. McGill Envtl. Sys. of N.C., Inc.*, No. 7:13-cv-270-D, 2015 WL 1125108, at *5 (E.D.N.C. Mar. 12, 2015) (quoting *United States v. Godwin*, 247 F.R.D. 503, 506 (E.D.N.C. 2007)) (internal quotations omitted).  Good cause exists where "evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline had passed."  *Godwin*, 247 F.R.D. at 506 (quoting *Interstate Narrow Fabrics, Inc. v. Century USA, Inc.*, 218 F.R.D. 455, 460 (M.D.N.C. 2003)).  A failure to show good cause ends the court's inquiry.  *United States v. $307,970.00 in U.S. Currency*, No. 4:12-cv-136-FL, 2013 WL 2251209, at *3 (E.D.N.C. May 22, 2013).

Pro se movants are not exempt from this requirement.  *See Alston v. Becton, Dickinson & Co.*, No. 1:12-cv-452, 2014 WL 338804, at *2–3 (M.D.N.C. Jan. 30, 2014) (noting that "withdrawal of [Plaintiff's] counsel did not relieve her of the obligation to conduct any discovery she wished to pursue").  Indeed, "[a]lthough pro se litigants are given liberal treatment by courts, even pro se litigants are expected to comply with time requirements and other procedural rules 'without which effective judicial administration would be impossible.'"  *Dancy v. Univ. of N.C. at Charlotte*, No. 3:08-cv-166, 2009 WL 2424039, at *2 (W.D.N.C. Aug. 3, 2009) (unpublished) (quoting *Ballard v. Carlson*, 882 F.2d 93, 96 (4th Cir. 1989)); *see e.g.*, *DeWitt v. Hutchins*, 309 F. Supp. 2d 743, 748–49 (M.D.N.C. 2004) (explaining that "a party's failure to comply with a scheduling order due to inattention, error, or unfamiliarity with court procedures will not be excused by [her] pro se status," as "'pro se litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines'" (quoting *Jones v. Phillips*, 39 F.3d 158, 163 (7th Cir. 1994))); *see also Blackwell*, 2013 WL 395107, at *3 (explaining that a pro se

movant's "fail[ure] to take reasonable steps" to ensure her compliance with discovery proceedings indicated not diligence, but "carelessness").

Here, Huggins seeks additional discovery after the date provided for in the already once-amended scheduling order. D.E. 42. Specifically, Huggins signed his motion on February 8, 2016, over two weeks after the extended deadline of January 22, 2016. *Id.* The burden is thus on Huggins under Rule 16(b) to show good cause. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *United States v. Godwin*, 247 F.R.D. 503, 506 (E.D.N.C. 2007).

Based on the record and the relevant authority, Huggins has not met this burden. Not only has Huggins made no effort to demonstrate that he was reasonably diligent in pursuit of the discovery he now seeks, but he also fails to offer any information that might otherwise justify his tardiness. His pro se status does not obviate his duty to comply with procedural rules and deadlines. *Alston*, 2014 WL 338804, at *3. Having failed to make the necessary showing, Huggins is not entitled to have the discovery period reopened to request additional documents from Defendants. His motion is denied.

## IV.     Motion to Defer Ruling on Summary Judgment

Huggins requests that the court delay the resolution of Defendants' Motion for Summary Judgment until he obtains video from the prison and his medical records. Defendants contend that Huggins had ample opportunity to obtain these documents, but did not do so. They also assert that additional discovery would be fruitless or duplicative of materials that have already been provided. As Huggins has not shown that the requested information will create a genuine issue of material fact or that he was diligent in pursuing materials during the discovery period, the court will deny his motion.

Rule 56(d) provides that a court defer ruling on a motion for summary judgment or deny the motion outright if the "non-movant shows by affidavit or declaration that, for specified reasons it cannot present facts essential to justify its opposition…." Fed. R. Civ. P. 56(d). Courts broadly favor and liberally grant Rule 56(d) motions. *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 484 (4th Cir. 2014). However, the non-moving party must comply with Rule 56(d) of the Federal Rules of Civil Procedure by submitting to the court an affidavit particularly setting out the reasons for discovery or otherwise adequately informing the court that the motion for summary judgment "is pre-mature and that more discovery is necessary." *Nadar v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008) (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)); *see also Harrods Ltd.*, 302 F.3d at 244–45 (stating, in part, that the court may consider whether the district court granted summary judgment prematurely when "the nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit'" (quoting *First Chi. Int'l v. United Exchange Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988))). The non-moving party must also demonstrate that the information sought would be "sufficient to create a genuine issue of material fact such that it would have defeated summary judgment. *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995). Even if the non-moving party complies with Rule 56(d) and demonstrates that the information sought would create a genuine issue of material fact, he "do[es] not qualify for Rule 56(d) protection where [he] had the opportunity to discover evidence but chose not to." *McCray*, 741 F.3d at 484.

Here, although Huggins provides a declaration in support of his motion, he fails to satisfy the remaining two requirements to be entitled to a stay under Rule 56(d). At no point does Huggins explain what the additional items he seeks would show or why they would create a genuine issue of material fact. Based upon Defendants' representation that the requested video

no longer exists[1] and that relevant records have already been placed in the record, it also appears that any additional discovery would not provide the parties or the court with any additional evidence. Moreover, Huggins fails to explain why he did not request this information prior to the dispositive motion deadline. The lack of an explanation is particularly relevant in light of the fact that Huggins served requests for production but did not seek the items at issue in the current motion. In light of Huggins's failure to make the necessary showing under Rule 56(d), his motion to defer ruling on summary judgment is denied.

## V.      Motion for Summary Judgment

In considering Defendants' Motion for Summary Judgment, the court views the evidence in the light most favorable to the plaintiff and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56; *see also Scott v Harris*, 550 U.S. 372, 378 (2007); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325–26 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–55 (1986); *Matsushita Elec. Indus., Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson*, 477 U.S. at 247–48. The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. *See Matsushita*, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

---

[1] The court makes no determination as to whether Defendants did or did not take appropriate steps to preserve the video in the aftermath of Huggins's alleged injury.

### A.    Excessive Force

Huggins initially claims that Roach violated his Eighth Amendment rights by closing a cell block door on him as he was attempting to enter a housing unit.  The case law is divided on whether this type of incident is analyzed as a use of excessive force, *see, e.g.*, *Sandifer v. Sparks*, No. 1-13-0138, 2016 WL 1023314 (M.D. Tenn. Mar. 8, 2016); *Ybarra v. Lamonda*, No. 1:14-cv-027, 2014 WL 10763030 (N.D. Tex. Dec. 9, 2014), or deliberate indifference to a risk to inmate safety, *see, e.g.*, *Love v. Salinas*, No. 2:11-cv-00361, 2011 WL 2620453 (E.D. Cal. July 1, 2011); *Orvis v. Hornbuckle*, No. 08-cv-11541, 2011 WL 1303426 (E.D. Mich. Feb. 23, 2011).  The distinction between the two categories of cases appears to be the manner in which the plaintiff is injured by the cell block door.  If the injury is the result of a malfunction of the door or an inmate being inadvertently being caught in the door, the case is analyzed as an inmate safety case.  However, if a correctional officer actively utilizes the door to injure an inmate, the case is analyzed as an excessive force case.  Here, as Roach is alleged to have intentionally closed the door on Huggins, the case falls into the latter category.

The Eighth Amendment to the Constitution, made applicable to the states through the Fourteenth Amendment, prohibits the infliction of "cruel and usual punishments…."  U.S. Const. amend. VIII.  The Supreme Court has interpreted this language to prohibit correctional officers from using "excessive physical force against prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  A prison official violates this provision when he "maliciously and sadistically use[s] force to cause harm…."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  This is true even if the inmate does not suffer a serious injury.  *Wilkins v. Gady*, 130 S.Ct. 1175, 1176 (2010).  However, mere negligence on the part of prison staff cannot establish a violation of the Eighth Amendment.  *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("To be cruel and unusual

punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety.").

## 1. Genuine Issue of Material Fact

As noted above, the parties do not agree on all of the circumstances that lead up to the door striking Huggins. There are two principal conflicts which could give rise to a genuine issue of material fact that could preclude summary judgment: whether Roach could have stopped the cell block door from closing on Huggins after initiating the closing process and whether Huggins was reading a document while walking through the cell block door. However, upon closer review, neither issue requires the court to deny the Defendants' motion.

Prison staff claim that the cell block doors are set up so that once the closing process has started, it cannot be stopped. Roach Aff. ¶ 8, D.E. 36-1. Huggins, on the other hand, asserts that "the door could have been stopped or reversed at any time by [Roach], but was not." Huggins Aff. ¶ 11, D.E. 44. Unlike the prison staff, who work with these doors on a regular basis, Huggins does not explain how he became aware of the manner in which the doors are operated. Without explaining the basis for his knowledge of the operation of the doors, the court must conclude that this statement is merely speculation on Huggins's part. As "[m]ere speculation by the non-moving party cannot create a genuine issue of material fact," *Cox v. Cty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001), this assertion does not preclude a finding of summary judgment in Roach's favor.

Next, Huggins challenges the assertion made by Assistant Unit Manager Harris that the video of the incident shows Huggins standing in front of the open doorway reading a document prior to passing through the doorway. Huggins Aff. ¶ 9. However, as the focus on this case is on Roach's state of mind when she closed the door, it is what she observed, not what Harris

claims to have seen in the video, that matters. Roach's affidavit makes no mention of Huggins reading a document, instead, she claims that she observed Huggins remain in the sally port area behind for a few moments, determined that he did not want to enter the cell block, and pressed the button to close the door. Roach Aff. ¶ 9. Huggins has not presented any evidence calling Roach's version of events into question. Thus, as the dispute over whether Huggins was reading a document before attempting to enter the cell block does not impact the outcome of the case under the applicable law, it does not create a genuine issue of material fact and it is appropriate to determine whether Roach is entitled to a judgment as a matter of law on the excessive force claim.

### 2. Entitlement to a Judgment as a Matter of Law

Here, when considering the undisputed facts in the light most favorable to him, Huggins has failed to present sufficient evidence to establish that Roach acted maliciously and sadistically when she closed the cell block door. The evidence demonstrates that Huggins was standing in a sally port area waiting to enter a cell block in response to a request that he meet with Assistant Unit Manager Harris. Huggins Aff. ¶¶ 7, 8. When the door opened, Roach observed inmates pass through the door and Huggins remain in the sally port area. Roach Aff. ¶ 9. After a few moments, Roach determined that Huggins wanted to remain in the sally port area and pressed the button to close the cell block door. *Id.* Huggins then began to walk through the door and was struck by it as it closed. Huggins Aff. ¶ 10. Due to the way the door operated, there was no way to stop it from closing on him. Roach Aff. ¶ 8. While unfortunate, these facts do not establish that Roach was acting with any sort of ill will. At worst, they demonstrate negligence. As a result, Huggins cannot establish a violation of his Eighth Amendment rights and Roach is entitled to a judgment as a matter of law on this claim.

13

## B.     Deliberate Indifference to Serious Medical Needs

To prevail on an Eighth Amendment claim, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." *Id.* "Deliberate indifference" requires that the prison official(s) knew of and ignored the inmate's serious medical needs. *Young v. City of Mount Ranier*, 238 F.3d 567, 575–76 (4th Cir. 2001) (citing *White ex rel. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997) ("A claim of deliberate indifference ... implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice."). The court first addresses plaintiff's claim of deliberate indifference to his serious medical need.

The evidence in this case demonstrates a number of relevant facts.  First, none of the named defendants are health care providers.  Roach Aff. ¶ 5; Stanley Aff. ¶¶ 5, 8; Rowland Aff. ¶¶ 6, 10.  Second, Huggins's shoulder pain and injuries were not caused by the incident with the door.  Umesi Aff. ¶ 15.  Instead, they were the result of a weight lifting injury and a degenerative condition.  *Id*.  Third, Huggins received regular and extensive treatment for his shoulder issues. Umesi Aff. *passim*.  Thus, he cannot establish that the Defendants were deliberately indifferent to his serious medical needs and Defendants are entitled to summary judgment on this claim.

## VI.     Conclusion

As discussed in more detail above, the court orders that Huggins's motion to delay consideration of the motion for summary judgment (D.E. 40) and his motion to amend the

scheduling order (D.E. 42) are denied. Furthermore, it is recommended that the Defendants' Motions for Summary Judgment (D.E. 33) be granted.

The court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: August 1, 2016.

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE

15